UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

KEVIN M. WIGGER,                              Case No. DG 17-04014
                                             Chapter 7
            Debtor.                          Hon. Scott W. Dales
_____/

KEVIN M. WIGGER,                             Adversary Pro. No. 18-80149

            Plaintiff,

v.

STATE TREASURER, WILLIAM A.
VAN ECK, ADA YOUNG and GEORGE
WIGGER,

            Defendants.
_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

I. INTRODUCTION

Kevin M. Wigger stands convicted of criminal sexual conduct in the third degree for crimes he committed before filing his chapter 7 bankruptcy petition, and he is currently incarcerated at the Central Michigan Correctional Facility. According to the Michigan Attorney General, his incarceration will continue until at least October 30, 2021 and possibly until June 10, 2030. To mitigate the costs of incarcerating state prisoners such as Mr. Wigger, the Michigan Legislature has long authorized the State to recover its costs from a prisoner's assets in accordance with the procedures and conditions prescribed in the State Correctional Facility Reimbursement Act, M.C.L. § 800.401 *et seq.* ("SCFRA").

According to Mr. Wigger's complaint in this adversary proceeding, Michigan's Treasurer (the "Treasurer") commenced a prepetition proceeding under the SCFRA against him in 2015 in Muskegon County Circuit Court, resulting in a judgment (the "SCFRA Judgment") freezing and subjecting to the Treasurer's reimbursement claim a substantial portion of Mr. Wigger's individual retirement account ("IRA") and half of the net proceeds of his recovery of a separate tort judgment against his son, George.[1]

Mr. Wigger, *pro se*, later filed a voluntary petition for relief under chapter 7, and then a complaint commencing this adversary proceeding against several entities to discharge all debts and liens against him and his property (ECF No. 1, the "Complaint"), in particular the Treasurer's interest in the IRA and the tort judgment against his son.  Mr. Wigger has claimed the IRA and the tort judgment as exempt under § 522 and seeks to avoid the Treasurer's interest in both under 11 U.S.C. § 522(f)(1)(A).

The court previously granted the motions to dismiss of two other defendants, so the Treasurer's Motion is the only one pending at this time.[2]  *See* Motion to Dismiss Case Pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6) (ECF No. 11, the "Motion"); *see also* Order dated Feb. 26, 2019 (ECF No. 28) (granting dismissal motions of Ada Young and George Wigger). And, because the court recently sustained the chapter 7 trustee's objection to Mr. Wigger's exemption in the tort judgment against his son, the IRA is the only currently exempt asset at issue in this adversary proceeding.  *See* Memorandum of Decision and Order dated April 12, 2019 (Base Case 17-04014, ECF No. 96) (sustaining objection to exemption claimed in the tort judgment).

---

[1] Mr. Wigger and the Treasurer entered into several consensual modifications of the SCFRA Judgment according to the motion papers.

[2] In an earlier ruling in this adversary proceeding, the court granted the dismissal motions filed on behalf of George Wigger and Ada Young.  Defendant William A. Van Eck has not responded to the Complaint, so the Treasurer is the only remaining active defendant.

After reviewing the Motion and Mr. Wigger's response, the court directed the parties to file supplemental briefs regarding the nature of the Treasurer's interest under the SCFRA Judgment. Having carefully considered the supplemental briefs, the court will deny the Motion.

## II. JURISDICTION AND STANDARD OF REVIEW

The court has jurisdiction over Mr. Wigger's bankruptcy case and this adversary proceeding pursuant to 28 U.S.C. §§ 157(a) and 1334 because the United States District Court has referred all bankruptcy cases and proceedings to the United States Bankruptcy Court, and because the property at issue is included within Mr. Wigger's bankruptcy estate. Because this adversary proceeding requires the court to consider Mr. Wigger's exemptions and the validity, priority, or extent of the Treasurer's interest in property of the bankruptcy estate, it is a "core proceeding" within the meaning of 28 U.S.C. § 157(b)(2)(B) and (K). In short, the court has ample authority to address the Motion and, eventually, to resolve the dispute with a final order.

In order to survive a motion to dismiss, a complaint must "contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544 (2007)); *see also Doe v. Miami University*, 882 F.3d 579, 588 (6th Cir. 2018). A claim has "facial plausibility when the plaintiff pleads factual content that allows the court to draw reasonable inferences" in support of the relief requested. *Iqbal*, 556 U.S. at 678; *Miami University*, 882 F.3d at 588.

### III. ANALYSIS

After sorting through a variety of issues the court ultimately rejects as red herrings,[3] the principal issue the Motion presents is whether the Treasurer's interest in the IRA is avoidable as a "judicial lien" within the meaning of § 522(f)(1)(A) or protected from avoidance under that section as a "statutory lien." *See* 11 U.S.C. §§ 101(36) (defining "judicial lien"), 101(37) (defining "lien"), 101(53) (defining "statutory lien"), and § 522(f)(1)(A) (permitting a debtor to avoid certain "judicial liens" on exempt property). If the Treasurer's interest is a "judicial lien," the Complaint to avoid it presents a "plausible" claim for relief, particularly given the Treasurer's concession that "Wigger likely meets the second and third element [of § 522(f)(1)(A)] . . ." *See* State Treasurer's Supplemental Brief Pursuant to the Court's 2/26/19 Order (ECF No. 32) at p. 5. If, on the other hand, the interest is a "statutory lien," then § 522(f)(1)(A) has no role to play and the court should dismiss the Complaint as it pertains to the Treasurer and the IRA.

First, the parties evidently agree that the Treasurer's interest in the IRA is a "lien," because they are only sparring over the classification of the interest as either "judicial" or "statutory." This concession seems sensible given the Code's definition of "lien" as a "charge against or interest in property to secure payment of a debt or performance of an obligation," 11 U.S.C. § 101(37), and the terms of the SCFRA Judgment that simply froze the IRA, rather than directing the outright and immediate transfer of it. Although the Treasurer concedes that she cannot collect her claim against Mr. Wigger through *in personam* remedies (such as a money judgment), it is quite clear that the

---

[3] For instance, Mr. Wigger argued extensively about the dischargeability of debt under the SCFRA, but the Treasurer concedes that the SCFRA does not operate *in personam*, only *in rem*. This concession makes it unnecessary to address arguments under §§ 523 and 727, for example, leaving only the question of whether the IRA is, or should remain, encumbered by a lien of some kind in the Treasurer's favor. Similarly, Mr. Wigger's invocation of various constitutional provisions is unhelpful because it misses the point. Moreover, for different reasons set forth in the court's Memorandum of Decision and Order dated April 12, 2019 and entered in the base case, the court has no occasion to address the Treasurer's claim to the judgment against Mr. Wigger's son George because that asset is not exempt, though today's decision under the SCFRA and § 522(f) would likely have preclusive effect against the Treasurer if the judgment against George is later treated as exempt.

Treasurer's "charge" against the IRA secures a "debt," which the Code defines as "liability on a claim." *See* 11 U.S.C. § 101(5) and (12) (defining "claim" and "debt," respectively); *cf.* 11 U.S.C. § 102(2) ("'claim against the debtor' includes claim against property of the debtor"). A fair reading of the SCFRA suggests that a prisoner in Michigan has a non-recourse obligation to reimburse the State for the cost of incarceration and that the prisoner's "assets" may, depending on the investigation of the Attorney General and the decision of the Michigan Circuit Court, become liable for the costs of incarceration, as occurred in Mr. Wigger's case under the SCFRA Judgment. *See* M.C.L. §§ 800.403 (attorney general investigation) and 800.404 (decision of the circuit court). The court finds that the Treasurer has a "lien" encumbering the IRA and the judgment against Mr. Wigger's son, and that the lien plausibly impairs the exemption in the IRA to some extent. The next (and dispositive) question, however, is whether the lien is "statutory" or "judicial," within the Bankruptcy Code definitions.

The term "'judicial lien' means lien obtained by judgment, levy, sequestration, or other legal or equitable process or proceeding." 11 U.S.C. § 101(36). As relevant here, the term "statutory lien," in contrast, "means lien *arising solely by force of a statute on specified circumstances or conditions* . . . but does not include security interest or judicial lien, whether or not such interest or lien is provided by or is dependent on a statute and whether or not such interest or lien is made fully effective by statute." *Id.* § 101(53) (emphasis added). The italicized text of the statute directs the court to consider the inception or origin of the challenged lien and makes clear that, as between the statutory and judicial categories, a lien must be either a statutory lien, or a judicial lien, but not both.

Although the cases establish that a lien does not become a "judicial lien" simply because perfection or enforcement depends on actions of a court, they also make clear that to qualify as a

statutory lien the lien must arise "solely by force of a statute on specified circumstances or conditions." *Cf. Yarmouth Commons Association v. Norwood*, 299 F. Supp. 3d 862, 870 (E.D. Mich. 2017);  2 Collier on Bankruptcy ¶ 101.53.

The Treasurer states, without authority, that the State has an inchoate lien under the SCFRA against the IRA.  The text of the SCFRA, however, does not support the argument, nor do the Treasurer's cited authorities establish, or even suggest, as much.  For example, unlike some mechanics lien statutes that create a lien immediately upon the performance of work or furnishing materials,[4] the SCFRA contains no such automatic lien-creating-language upon sentencing (as the Treasurer baldly contends).  Rather, it plainly appears under the SCFRA that a prisoner's assets would remain completely unencumbered if either the Director of the Department of Corrections, or the Attorney General, or the State's Circuit Court, failed to act.  *See* M.C.L. §§ 800.402-800.404. Indeed, after the Attorney General completes the investigation under M.C.L. § 800.403 and "has good cause to believe that a prisoner has enough assets to recover not less than 10% of the estimated cost of his care or 10% of the estimated cost of care of the prisoner for 2 years, whichever is less," then and only then may the Attorney General "seek to secure reimbursement for the expense."  *Id.* § 800.403.  This suggests that the reimbursement claim is not "secured" until the Attorney General obtains an order to that effect from the Circuit Court under M.C.L. § 800.404. In other words, until the entry of the judge's order, the Attorney General is simply *seeking* to

---

[4] The Attorney General cites *In re Howe*, Slip Op. Case No. 16–32083, 2018 WL 3025316 (Bankr. N.D. Ohio June 15, 2018), which naturally regarded the mechanics lien at issue in that case as statutory because the statute under review provided that any contractor, subcontractor, etc. who "performs work or labor or furnishes material in furtherance of any improvement . . . has a lien to secure the payment."  O.R.C. § 1311.02.  In other words, the Ohio mechanics lien statute itself created the lien automatically upon specified circumstances or conditions (performing labor or furnishing materials), even if some judicial process is required for perfection or enforcement of the lien.  11 U.S.C. § 101(53).  If the SCFRA were to include a comparable lien-creating provision, the court most likely would reach a different conclusion regarding this Motion.

secure, through a lien or otherwise, the reimbursement claim.  The statute does not speak in terms of perfecting an interest through judicial process but instead creating it.

And, even if the Attorney General files such a complaint with the Circuit Court, the court might refuse to grant relief after considering, for example, the prisoner's legal or moral obligations to dependents.  Further showing that the Treasurer's lien under the SCFRA does not arise "solely" under the statute without judicial intervention, the SCFRA conditions the creation of the lien on the outcome of the Circuit Court proceedings and the opinion of the court: "[i]f, in the opinion of the court, the assets of the prisoner are sufficient to pay the cost of the proceedings under this act, the assets shall be liable for those costs upon order of the court." *Id*. § 800.404(7).  In other words, the prisoner's assets do not become liable—*i.e.*, subjected to the reimbursement obligation—until the Circuit Court enters an order to that effect, as Judge Hicks did in entering the SCFRA Judgment in this case.  Under the court's construction of the SCFRA, no lien reaches any asset unless and until the Director of the Department of Corrections notifies the Attorney General that a prisoner may have assets, the Attorney General files a complaint after forming a good faith belief that the assets may be sufficient to cover at least 10% of the costs of a prisoner's care, and a Circuit Court judge reaches the same conclusion after considering a prisoner's family obligations.

None of the cases upon which the Treasurer relies suggests a different reading of the SCFRA, and several of the cases are either inapplicable (*Quackenbush v. Henry*, 42 Mich. 75 (1879)) [5] or distinguishable (*In re Howe*, Slip Op. Case No. 16–32083, 2018 WL 3025316 (Bankr. N.D. Ohio June 15, 2018)).  *See, supra*, at p. 6, n.4.  Accordingly, the Treasurer's interest in Mr. Wigger's IRA is a "judicial lien" which may be avoided to the extent Mr. Wigger establishes the

---

[5] Within the Treasurer's Supplemental Brief, counsel incorrectly cites this case as *Quackenbush v. Henry*, 42 Mich. App. 234 (1997).

other elements of § 522(f)(1)(A).  Because Mr. Wigger has a plausible claim for avoidance of the Treasurer's lien under § 522(f)(1)(A) to some extent, the court will deny the Motion.

## IV. CONCLUSION AND ORDER

Today's opinion determines only that Mr. Wigger has a plausible claim for relief regarding the Treasurer's lien against the IRA—a crucial conclusion in this dispute—but does not end the litigation.  Nevertheless, as the Treasurer noted in her supplemental brief, there may be very little controversy about Mr. Wigger's ability to meet the remaining elements of § 522(f)(1)(A) with respect to the IRA.  If so, the court encourages the parties to consider stipulating to a resolution of the remaining issues raised in the Complaint, while perhaps preserving the Treasurer's appellate rights, to put the court in the position of entering a single judgment under Fed. R. Civ. P. 54(b).

Of course, if the parties cannot reach agreement to bring the litigation to a swift conclusion, the court will conduct pretrial proceedings, consider other dispositive motions if filed, or conduct trial as necessary.  The court will give the parties a brief opportunity to resolve the dispute before scheduling the usual pretrial conference under Fed. R. Civ. P. 16.

NOW, THEREFORE, IT IS HEREBY ORDERED that (1) the Motion (ECF No. 11) is DENIED; and (2) the court will not conduct a pretrial conference any sooner than forty-five days after entry of this Memorandum of Decision and Order.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Mr. Kevin M. Wigger (via first class U.S. Mail), and Katherine C. Kerwin, Esq. (via first class U.S. Mail).

**IT IS SO ORDERED.**

**Dated April 16, 2019**



_____
Scott W. Dales
United States Bankruptcy Judge