UNITED STATES BANKRUPTCY COURT
WESTERN DISTRICT OF MICHIGAN

In re:

KEVIN MARK WIGGER,                                    Case No. DG 17-04014
                                                      Chapter 7
                  Debtor.                             Hon. Scott W. Dales
_____/

KEVIN MARK WIGGER,                                    Adversary Pro. No. 18-80149

            Plaintiff,

v.

STATE TREASURER, WILLIAM A.
VAN ECK, ADA YOUNG and GEORGE
WIGGER,

            Defendants.
_____/

MEMORANDUM OF DECISION AND ORDER

PRESENT:    HONORABLE SCOTT W. DALES
            Chief United States Bankruptcy Judge

I. INTRODUCTION

This case presents a clash between two sensible policies, one federal, one state. The first

policy -- Bankruptcy's familiar "fresh start" -- permits individual debtors to declare specified

property as exempt, thereby making it no longer liable for payment of most prepetition claims.

The second policy, of state origin, permits the State of Michigan to recover the costs of

incarcerating prisoners by subjecting their assets -- even assets exempt under state law -- to the

State's claim under the State Correctional Facility Reimbursement Act, M.C.L. § 800.401 *et seq.*

("SCFRA"). This case involves an incarcerated chapter 7 debtor's effort to secure the benefit of

his federal exemptions by avoiding the State of Michigan's liens under the SCFRA against his exempt property.

More specifically, chapter 7 debtor Kevin M. Wigger (the "Debtor"), currently incarcerated after his conviction as a sex offender, filed a complaint against the Treasurer of the State of Michigan (the "Treasurer") to avoid the Treasurer's liens against two assets the Debtor has claimed as exempt: an individual retirement account (the "IRA"), and the Debtor's judgment against his son (the "Judgment"). The Treasurer, armed with a prepetition state court order making the IRA and the Judgment liable for the costs of the Debtor's incarceration to some extent, opposes the Debtor's complaint, arguing (initially at least) that its liens survive bankruptcy.

Although state law usually supplies the rule of decision in federal civil proceedings, state law must yield to federal law where the latter applies. 28 U.S.C. § 1652 (Rules of Decision Act); U.S. Const. Art. VI, Clause 2 (Supremacy Clause). Here, the Treasurer's rights under the SCFRA must yield to the Debtor's exemption rights under § 522. Accordingly, the court is constrained to avoid the Treasurer's liens on the Debtor's exempt assets, even though doing so will permit a convicted sex offender to avoid shouldering the costs of his incarceration.

## II.  JURISDICTION

The court has jurisdiction over the Debtor's chapter 7 bankruptcy case pursuant to 28 U.S.C. § 1334(a). That case and this adversary proceeding have been referred to the bankruptcy court under 28 U.S.C. § 157(a) and W.D. Mich. LGenR 3.1. Because this adversary proceeding involves the Debtor's exemption and the validity of the Treasurer's liens on exempt property, it falls within the court's core authority under 28 U.S.C. § 157(b)(2)(A), (B) and (K), and the court is authorized to enter final judgment. Neither party has suggested otherwise.

### III. ANALYSIS

1.      **Procedural and Factual Background**

The Debtor filed and served his complaint against several defendants,[1] including the Treasurer.  As to the Treasurer, the Debtor seeks an order avoiding the Treasurer's liens against the IRA and the Judgment under § 522(f), as impairing his exemption in those assets.  The Treasurer initially moved to dismiss the complaint, contending that its lien is not a "judicial lien" -- a prerequisite for relief under § 522(f) -- but instead is a statutory lien, untouchable under § 522(f).  The court rejected the Treasurer's argument, concluding that the lien is a "judicial lien" and denying the dismissal motion.  *See* Memorandum of Decision and Order dated April 16, 2019 (AP ECF No. 35).[2]  The court later denied the Treasurer's motion for reconsideration and suggested that the case may be ripe for summary judgment.  *See* Memorandum of Decision and Order dated April 30, 2019 (AP ECF No. 40).

Accepting the court's suggestion, on May 17, 2019 the Debtor filed his motion for summary judgment (AP ECF No. 45, the "Motion"), contending that the Treasurer's judicial lien impairs his exemption in the IRA.[3]  The Treasurer filed a response to the Motion (AP ECF No. 47, the "Response"), reiterating the argument that liens under the SCFRA are "statutory," not "judicial," and arguing that the Debtor's exempt property will remain liable for the cost of his post-

---

[1] The claims against the other defendants have been resolved through earlier orders so that only the claim regarding the Treasurer's lien remains for decision.

[2] The court will cite to documents within the adversary proceeding docket (18-80149) as "AP ECF No. __" and to documents within the Debtor's base case (17-04014) as "BC ECF No. __."

[3] The Debtor did not mention the Judgment in his initial moving papers, but he did in his reply papers and during a hearing regarding the Motion.  After the Debtor made clear that he intends to liberate the Judgment from the Treasurer's lien under the SCFRA, the court gave the Treasurer an opportunity to address the issue through supplemental briefing.  *See* Order Following Pretrial Conference dated July 12, 2019 (AP ECF No. 51).

petition reimbursement obligation, notwithstanding any avoidance the court may order under § 522(f).

The following facts, taken from the record, are not disputed. The Debtor is currently incarcerated at the Central Michigan Correctional Facility and likely will remain there for at least another two years (and possibly as many as another eleven years) at considerable expense to Michigan's taxpayers. According to the Treasurer, the Debtor's incarceration imposes on Michigan taxpayers a cost of approximately $79.00 per day. Indeed, in previous filings (and without distinguishing between prepetition and post-petition costs), the Treasurer has asserted a non-recourse claim against the Debtor's IRA and the Judgment, in an amount between $403,040.00 and $598,380.00 under the SCFRA. The Treasurer further contends that it will never recover its total claim of $403,040.00 because "the balance of the IRA is less than the minimum cost of care through his earliest release date. *See* Brief in Support of State Treasurer's Response to Debtor's Motion to Rescind or in the Alternative, Modify Second Amended State Court's Order to Fifth Third Securities Freezing Debtor's IRA Account (BC ECF No. 56) at p. 12 and Exh. F (Affidavit of Anita Talcott). The Talcott Affidavit shows the cost of the Debtor's incarceration as of July 28, 2015 (two years before the petition date) was $261,950.00 and the Treasurer estimates a post-petition cost of incarceration of at least $112,133.25.

The Treasurer has asserted an "inchoate lien upon all assets in Wigger's estate" to secure the total costs of his incarceration. The Muskegon County Circuit Court (the "State Court") described the Treasurer's interest under the SCFRA as a lien established through ancillary proceedings *in rem*. *See* Opinion and Order Denying Defendant's Motion to Modify or Amend Stipulated Second Amended Final Order dated January 18, 2019 at p. 4 (citing *Auditor General v. Hall*, 1 N.W.2d 516 (Mich. 1942)) (attached as Exh. A to Supplement to Defendant State

Treasurer's Brief in Support of Motion to Dismiss Case Pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6)) (AP ECF No. 26). The State Court's characterization of the Treasurer's interest in the Debtor's property under the SCFRA might just as well apply to the typical post judgment judicial lien in Michigan, usually the product of supplementary proceedings under M.C.L. § 600.6101 *et seq.*, and M.C.R. 2.621, directed against the judgment debtor's property.

To secure this claim, the Treasurer obtained an order under the SCFRA from the State Court effectively encumbering 90% of the Debtor's interest in the IRA and 50% of his interest in the Judgment. *See* Final Order dated December 8, 2015 (attached as Exh. A. to Defendant State Treasurer's Brief in Support of Motion to Dismiss Case Pursuant to Fed. R. Bankr. P. 7012(b) and Fed. R. Civ. P. 12(b)(6)) (AP ECF No. 11-3).

Without contradiction, the Debtor values the IRA at $84,850.00 and the Judgment at $24,601.58. *See* Amended Schedule C, ¶ 2 (BC ECF No. 107).[4]

Putting aside for the moment the Treasurer's suggestion that the court should bifurcate the claim into prepetition and post-petition components,[5] the Treasurer has asserted liens against the IRA and the Judgment to secure reimbursement of incarceration expenses in the amount of at least $403,040.00 and as much as $598,380.00.

The Debtor has claimed as exempt the IRA in the amount of $84,850.00 under § 522(d)(12) and has claimed the Judgment as exempt under § 522(d)(5) in the amount of $13,100.00. *See*

---

[4] Although the original (face value) of the Judgment is $64,812.52, in litigation between the Debtor and his son, George, Judge James W. Boyd determined that $24,601.58 of the Judgment was excepted from the discharge injunction in the son's own bankruptcy case. *See Bruinsma v. Wigger (In re Wigger),* 595 B.R. 236 (Bankr. W.D. Mich. 2018).

[5] In several filings, the Treasurer has stated that the Debtor will owe approximately $120,000.00 allocable to his post-petition incarceration, based on a current per diem cost of $79.00 and earliest possible release date of October 30, 2021. *See, e.g.,* State Treasurer's Response to Plaintiff's Motion for Summary Judgment (AP ECF No. 47, the "Response") at p. 4. For his part, the Debtor calculated the impairment of his exemption in the IRA using a lien value of $325,240.00, representing the Treasurer's "debt/lien as of August 25, 2017 . . . ." *See* Motion at ¶ 3.

Amended Schedule C (BC ECF No. 107) and Plaintiff's Response to State Treasurer's Response to Plaintiff's Motion for Summary Judgment (AP ECF No. 49, the "Reply") at p. 2. The time for objecting to these two (amended) exemption claims has passed, so the property claimed as exempt "is exempt." *See* Fed. R. Bankr. P. 4003(b)(1) (30-day deadline for objecting) and 11 U.S.C. § 522(*l*).

### 2.	**Avoidance of the Treasurer's Liens Under § 522(f)**

The Debtor contends that the Treasurer's lien impairs his exemption in the IRA and the Judgment, relying on § 522(f) to avoid the lien and secure for himself the value of these assets.

This court recently explained the process of avoiding a lien under § 522(f), noting that "[t]hree elements must be satisfied in order for a debtor to avoid a judicial lien under § 522(f)(1)." *In re Harris*, No. BG 14-04686, 2014 WL 7361834, at *2 (Bankr. W.D. Mich. Dec. 23, 2014).

> First, the lien must be a judicial lien. Second, there must have been a fixing of a lien against an interest of the debtor in property. And third, the lien must impair an exemption to which the debtor would otherwise be entitled.

*Id.* (citations omitted). More specifically, § 522(f) provides in relevant part as follows:

> Notwithstanding any waiver of exemptions but subject to paragraph (3), the debtor may avoid the fixing of a lien on an interest of the debtor in property to the extent that such lien impairs an exemption to which the debtor would have been entitled under subsection (b) of this section, if such lien is—
>
> > (A) a judicial lien, other than a judicial lien that secures a debt of a kind that is specified in section 523(a)(5). . . .

11 U.S.C. § 522(f)(1)(A). As previously noted, in denying the Treasurer's dismissal motion, the court determined that the Treasurer does in fact hold a "judicial lien," as opposed to a "statutory lien," and there is no suggestion that the Treasurer's debt qualifies as a domestic support obligation

under § 523(a)(5).  The Debtor, therefore, satisfies the first prerequisite to avoidance under § 522(f).

In an earlier decision, however, the court reminded the Debtor that he must also establish that the Treasurer's judicial lien "impairs" his exemptions, within the meaning of § 522(f)(2)(A). The Bankruptcy Code sets forth a mathematical formula for determining whether a lien impairs an exemption:

> For the purposes of this subsection, a lien shall be considered to impair an exemption to the extent that the sum of—
>
> (i) the lien;
> (ii) all other liens on the property; and
> (iii) the amount of the exemption that the debtor could claim if there were no liens on the property;
>
> exceeds the value that the debtor's interest in the property would have in the absence of any liens.

*Id.* § 522(f)(2)(A).  By filing his Motion, the Debtor endeavors to meet this burden and bring this adversary proceeding to its conclusion.

With respect to the IRA, the Treasurer appears to concede that if its lien is judicial, it completely impairs the exemption.  This makes sense because, under the State Court's order, the Treasurer's lien reaches only 90% of the net proceeds of the IRA (after taxes) or 80% (before taxes) and the Debtor has claimed the IRA as fully exempt.  The parties do not dispute that the Treasurer's claim far exceeds 80% of the value of the IRA, even excluding any costs allocable to the post-petition period.  This makes the impairment calculation straightforward with respect to the IRA, as summarized in the following table:

| | | |
|---|---|---|
| 1 | Debtor's interest in the IRA  ("the value that the debtor's interest in the property would have in the absence of any liens" (§ 522(f)(2)) | $84,850.00 |
| 2 | Amount of the Treasurer's lien (§ 522(f)(2)(A)(i)) (80% of Debtor's interest in IRA) | $67,880.00 |

| 3 | All other liens on the property (§ 522(f)(2)(a)(ii)) | $0.00 |
|---|---|---|
| 4 | The amount of the exemption that the debtor could claim if there were no liens on the property (§ 522(f)(2)(a)(iii)) | $84,850.00 |
| 5 | Sum of Rows 2-4 | $152,730.00 |
| 6 | Extent the Treasurer's lien exceeds the value of the Debtor's interest and impairs his exemption(the amount that Row 5 exceeds Row 1) | $67,880.00 |
| 7 | Value of Treasurer's lien against IRA after avoidance (difference between Row 2 and Row 6) | $0.00 |

With respect to the Judgment, Debtor also claims in his Reply that the Treasurer's lien impairs his exemption in that asset, and that the Treasurer is entitled to only half of the net proceeds after the Debtor's exemption, or $700.00. The court agrees that the Treasurer's lien impairs the Debtor's exemption but rejects the Debtor's calculation of impairment because it appears to apply the 50% reduction (set forth in the State Court's Final Order) at several levels of the calculation, contrary to the formula set forth in § 522(f)(2).[6]

The following table sets forth the court's calculation of the extent to which the Treasurer's lien against the Judgment impairs the Debtor's exemption:

| A | Debtor's interest in the Judgment ("the value that the debtor's interest in the property would have in the absence of any liens" (§ 522(f)(2)) | $24,601.58 |
|---|---|---|
| B | Amount of the Treasurer's lien (§ 522(f)(2)(A)(i)) (50% of Debtor's interest in the Judgment) | $12,300.79 |
| C | All other liens on the property (§ 522(f)(2)(a)(ii)) | $0.00 |
| D | The amount of the exemption that the debtor could claim if there were no liens on the property (§ 522(f)(2)(a)(iii)) | $13,100.00 |
| E | Sum of Rows B-D | $25,400.79 |

---

[6] The calculation of impairment with respect to the Judgment is complicated by the fact that the State Court awarded the Treasurer half of the Debtor's net recovery from his son, evidently permitting a *pro rata* sharing of receipts as collections occur, rather than assigning first priority to the Treasurer's lien over the Debtor's interest to ensure the Treasurer is paid before the Debtor.

| F | Extent the Treasurer's lien exceeds the value of the Debtor's interest and impairs his exemption (the amount that Row E exceeds Row A) | $799.21 |
|---|---|---|
| G | Value of Treasurer's lien against the Judgment after avoidance (difference between Row B and Row F) | $11,501.58 |

In some ways, § 522(f) treats a debtor's exemption claim as a "super lien" against the exempt asset, giving the exemption claim first priority over a judicial lien up to the amount of the exemption.  In the absence of avoidance, the Treasurer's lien under the SCFRA consumes the lion's share of any equity to which the Debtor's exemption could attach. *Cf. In re Brown*, 851 F.3d 619, 624-25 (6th Cir. 2017) (borrowing concepts from secured transactions, such as equity and attachment, to describe operation of § 522).  Avoidance under § 522(f), however, rearranges the priorities as between a debtor and the holder of the judicial lien.  After avoidance of the Treasurer's lien, the Debtor's unchallenged exemption claim in the entire value of the IRA means that there is no value (after satisfying the exemption) to support the Treasurer's lien against that asset.  Accordingly, the statute avoids the judicial lien entirely.

With respect to the Judgment, however, the Debtor's "super lien" against the Judgment is capped by § 522(d)(5) at $13,100.00, leaving $11,501.58 of value (after satisfying the exemption) to support the Treasurer's lien in the Judgment.  The avoidance of the Treasurer's lien in the Judgment, therefore, is only partial -- just enough to ensure that the Debtor's exemption is satisfied.  In the unlikely event that the Debtor recovers from his son on account of the Judgment, the court assumes that the State Court will continue to permit the *pro rata* sharing of any recovery, capping the Treasurer's ultimate recovery at $11,501.58, and the Debtor's share at $13,100.00.

For the foregoing reasons, the court will enter judgment avoiding the Treasurer's lien in the IRA entirely and avoiding the Treasurer's lien against the Judgment to the extent of $799.21.

This will leave $11,501.58 of the Treasurer's lien against the Judgment in place and enforceable against half of the Debtor's net recovery from his son, George.[7]

3.       **Treasurer's Proposed Post-Petition Collection Under the SCFRA**

Evidently anticipating the avoidance of its lien (after the court determined it was a "judicial lien" under § 101(36) rather than a statutory lien under § 101(53)), the Treasurer announced its intention to return to the State Court, post-bankruptcy, to pursue reimbursement under the SCFRA of the cost of the Debtor's post-petition incarceration.  The Treasurer apparently contends that the reimbursement obligation for the Debtor's post-petition incarceration survives discharge (either because it arises post-petition or under § 523(a)(7)), and that the Debtor's exempt property will remain liable for the claim in the post-bankruptcy suit the Treasurer intends to file under SCFRA. The Debtor opposes the Treasurer's post-bankruptcy litigation plans on the grounds that bifurcating the Treasurer's claim into prepetition and post-petition components would eviscerate the benefit of his exemption in the IRA and the Judgment.

Although the Treasurer has not yet filed suit, the court regards this aspect of the parties' dispute as sufficiently concrete to permit it to declare the parties' rights with respect to the IRA and the Judgment, given  the Treasurer's unequivocal declaration of its intention to file suit and the Debtor's present efforts to secure the benefits of his exemption by seeking an order barring the Treasurer from further encumbering his exempt assets.  *See* Fed. R. Bankr. P. 7001(2), (7), and (9); *In re Capps*, No. 16-10141, 2018 WL 3635708, at *2 (Bankr. D. Kan. July 26, 2018 (citing case law that recognizes bankruptcy courts' authority to grant declaratory judgments).

This aspect of the parties' dispute requires the court to declare the Debtor's rights under § 522(c), which in turn requires the court to construe the Bankruptcy Code's definitions of "debt"

---

[7] Nothing in this calculation is intended to afford the Treasurer more than 50% of the net proceeds that the Debtor may collect from his son on account of the Judgment (after entry of Judge Boyd's judgment in *Bruinsma v. Wigger*).

and "claim."  *See* 11 U.S.C. § 101(5) (defining "claim") and 101(12) (defining "debt").  To assist in this task, and to afford the Treasurer every opportunity to be heard before reaching a decision on this important point, the court permitted the Treasurer to file a supplemental brief addressing the scope of the Treasurer's claim, and more specifically, whether that claim included the contingent, unmatured, or unliquidated liability allocable to the Debtor's post-petition incarceration.

The court begins with the text of § 522(c), which provides in relevant part as follows:

> (c) Unless the case is dismissed, property exempted under this section is not liable during or after the case for any *debt* of the debtor that arose, or that is determined under section 502 of this title as if such debt had arisen, before the commencement of the case, except—
>
>  (1) a debt of a kind specified in paragraph (1) or (5) of section 523(a) (in which case, notwithstanding any provision of applicable nonbankruptcy law to the contrary, such property shall be liable for a debt of a kind specified in such paragraph);
>
>  (2) a debt secured by a lien that is—
>    (A) (i) not avoided under subsection (f) . . .

11 U.S.C. § 522(c) (emphasis added).  The Supreme Court teaches that "[u]nder the Bankruptcy Code, 'debt' means 'liability on a claim,' § 101(12), and 'claim,' in turn, includes any 'right to payment,' § 101(5)(A)."  *F.C.C. v. NextWave Pers. Commc'ns Inc.*, 537 U.S. 293, 294 (2003).  The definition of "claim," therefore, becomes crucial in the analysis.  Congress defines "claim" for purposes of title 11 in relevant part as follows:

> Claim means . . . right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured . . .

11 U.S.C. § 101(5).

As the Supreme Court also noted, "Congress intended by this language [in §101(5)] to adopt the broadest available definition of 'claim.'" *Johnson v. Home State Bank*, 501 U.S. 78, 83 (1991). Moreover, a "right to payment" means "nothing more nor less than an enforceable obligation...." *Pennsylvania Dept. of Public Welfare v. Davenport*, 495 U.S. 552, 559 (1990). Obviously, under the State Court's Final Order the Debtor had an "enforceable obligation" which the State Court sought to secure by freezing his IRA (and encumbering the Judgment) to secure current and *future* costs of his incarceration. Although the State Court was not using the Bankruptcy Code definition of claim, it did not hesitate to grant the Treasurer relief with respect to future, which is to say, "unmatured," "unliquidated," and "contingent," costs of incarceration, by recognizing an enforceable obligation under the SCFRA for future costs based on the Treasurer's arguments and Affidavit of Anita Talcott (previously mentioned).[8] Given the strong federal policy of creating a single, federal forum, for resolving "claims" (broadly defined), and given the language of § 522(c) which is designed to effectuate a debtor's fresh start by providing robust protection of exempt property, the court easily concludes that the Treasurer's claim against the Debtor's property on the petition date embraced the unmatured, contingent, and unliquidated costs of post-petition incarceration.

The court has reviewed the Treasurer's Supplemental Brief Following Order Following Pretrial Conference (the "Supplemental Brief," ECF No. 52) and finds within it no basis for limiting the Treasurer's claim to the prepetition incarceration costs. First, the citation to out-of-district authority, *Carlisle County Fiscal Court v. Maxwell (In re Maxwell),* 229 B.R. 400 (Bankr. W.D. Ky. 1998), is neither binding nor applicable.

---

[8] Having successfully taken that position before the state courts, judicial estoppel could conceivably bar the argument for a more limited claim before this court. *New Hampshire v. Maine*, 532 U.S. 742,749 (2001) (discussing judicial estoppel and effect of successfully taking position in one action and changing theory in later action).

Although the court in *Maxwell* certainly expressed deference to Kentucky's criminal process, the decision addressed only whether the State's claim for reimbursement of incarceration costs was "penal" and therefore excepted from discharge under § 523(a)(7); the court did not address the scope of exemptions. Moreover, as this court previously ruled based on the Treasurer's earlier argument, the SCFRA operates *in rem*, not *in personam*, so the issue of dischargeability of the State's non-recourse claim under § 523(a)(7) is not before the court. *Maxwell* is not germane. Rather, the issue today is the scope of the Debtor's exemption, a question that § 522(c) governs, and that in turn depends on the breadth of the Treasurer's claim. Certainly, if § 522(c) had made an exception for debts of a kind under § 523(a)(7), as it does for debts of a kind under § 523(a)(1) and (a)(5), the result in this case would be different. The court must assume, however, that Congress carefully considered the types of non-dischargeable debts for which exempt property would remain liable. Based on the statutory text, the court concludes that Congress did not enumerate debts under § 523(a)(7) among the favored few for which otherwise exempt property remains liable. *See* 11 U. S.C. § 522(c).

The statutory definition of "claim" is broad enough to include unmatured, contingent, and unliquidated claims such as the Treasurer's non-recourse claim against the Debtor's exempt property and the state statutory basis for the Treasurer's claim is no reason to ignore the breadth of the federal definition of "claim" and therefore "debt" as used in § 522(c). The court, therefore, rejects the Treasurer's argument to the contrary and finds nothing in the Supplemental Brief to support the conclusion that the Treasurer remains free to surcharge the Debtor's exempt property for post-petition reimbursement obligation, except to the extent its lien survives the court's avoidance under § 522(f) as to the Judgment.

Second, the court rejects the Treasurer's argument that it is entitled to special treatment simply because the rules afford governmental entities additional time to file proofs of claim, or the Bankruptcy Code does not require taxing authorities to accept post-petition tax payments through a chapter 13 plan. *See* Supplemental Brief at p. 12 (citing Fed. R. Bankr. P. 3002(c)(1) and 11 U.S.C. § 1305). Rather than suggest that the governmental entities should enjoy protection beyond those enumerated in the cited provisions, the Treasurer's argument fortifies the court's conclusion that the Bankruptcy Code provides no special treatment with respect to exemptions, other than as prescribed in § 522(c), under the canon of statutory construction known as *expressio unius est exclusio alterius*, or more plainly, the expression of one thing implies the exclusion of others.

## IV. CONCLUSION AND ORDER

To summarize the court's conclusions, the Treasurer's completely impairs the Debtor's exemption in the IRA, and therefore the court's judgment will avoid that lien against that asset, completely. The Treasurer's lien against the Judgment survives but is limited to $11,501.58 after avoidance under § 522(f). The court assumes that the *pro rata* sharing of any proceeds of the Judgment will continue, subject to the State Court's Final Order except as otherwise provided in this Memorandum of Decision and Order. Finally, the IRA and other exempt assets will no longer be available to satisfy the Debtor's prepetition or post-petition debt under the SCFRA. The court will regard as contemptuous any effort by the Treasurer to surcharge exempt property (other than an appeal from the court's judgment).

With respect to the Treasurer's request for a stay of the judgment pending appeal (included within the Supplemental Brief), the court will deny the request without prejudice to filing a separate motion under Fed. R. Bankr. P. 8007 -- after the court enters judgment. Proceeding in this fashion will afford the Debtor an opportunity to respond to the request and also give the

Treasurer a chance to seek a stay based on the applicable standards rather than a general appeal to equity. In any event, the court's judgment will be automatically stayed for 14 days under Fed. R. Civ. P. 62 as incorporated and modified by Fed. R. Bankr. P. 7062.

The court does not relish shifting the costs of a convicted sex offender's incarceration back to Michigan taxpayers, but is constrained to apply the law "without respect to persons"[9] by following its reading of the Bankruptcy Code and Supreme Court precedent that is, after all, the supreme law of the land.  And finally, as the court noted in an earlier ruling, the Treasurer should consider pursuing from the legislature an amendment to the SCFRA so that in the future any lien securing reimbursement arises "solely by force of a statute on specified circumstances or conditions," as §101(53) requires, rather than depending upon a decision in an *in rem* proceeding ancillary to a criminal case.

NOW, THEREFORE, IT IS HEREBY ORDERED that the Clerk shall enter judgment consistent with this Memorandum of Decision and Order, which judgment will end the litigation, resolving all claims against all parties at issue in the Debtor's complaint.

IT IS FURTHER ORDERED that the Clerk shall serve a copy of this Memorandum of Decision and Order pursuant to Fed. R. Bankr. P. 9022 and LBR 5005-4 upon Mr. Kevin M. Wigger (via first class U.S. Mail), Katherine C. Kerwin, Esq., and the United States Trustee (via first class U.S. Mail).

END OF ORDER

**IT IS SO ORDERED.**

**Dated August 26, 2019**



Scott W. Dales
United States Bankruptcy Judge

---

[9] 28 U.S.C.  §§ 153(c) (bankruptcy judges to take oath) and 453 (oaths of judges and justices).